Good morning everyone and welcome to the Ninth Circuit. Judge Nelson and I are pleased to have Judge David Ezra, District Judge for the District of Hawaii, who's helping us today. Thank you. Thank you for the opportunity and the honor. We will take the cases in the order on the day sheet. We have a number of cases submitted on the briefs. First, Manuel V. Bondi is submitted. Rojas Ruiz v. Bondi is submitted. Full Tilt Boogie v. Bick, the Bicks, is submitted. And our first case for argument is Lawrence Kalbers v. DOJ NVW. Thank you, Your Honor, and may it please the court. Sean Janda for the federal government. I'm going to endeavor to reserve three minutes of my time for rebuttal and six minutes for Ms. Ratner, who will be arguing on behalf of Volkswagen after me. Okay, please watch the clock. I will do. Rule 60, which codifies traditional principles of grand jury secrecy, generally prohibits the government from disclosing information that would tend to reveal the nature and direction of a grand jury investigation. In this case, Kalbers seeks six million documents, all six million documents, that Volkswagen produced in response to a grand jury subpoena. Could I ask you a question? We have the special master's opinion, and the plaintiff has already agreed to limit his request by excluding all untagged records. Is that not correct? Because she then goes on to say that according to the chief of litigation, there are approximately 3.3 to 4.3 million untagged records, leaving between 720,000 to 1.3 million tagged records. So she thought, the special master thought, that Kalbers had agreed to restricting the materials that had to be disclosed. Could you address that? My understanding is that Professor Kalbers has not formally agreed to amend his FOIA request down to a smaller number of documents and has resisted attempts to do that, though has suggested in the litigation that he may be willing to restrict it to the tagged records, or maybe have those go first. So the special master's statement was incorrect, is that your understanding? I don't want to say it's incorrect, Your Honor, but I'm not sure that that's a sort of formal concession that Professor Kalbers has made, although I think his counsel would be better positioned to address that. That being said, even assuming for purposes of the question that he's only seeking… Would you agree to the tagged records? What are the tagged records? So, no, is the answer. I mean, the tagged records seem to be at the… I would assume they're sort of at the heart of this. Right, Your Honor. So my understanding is the tagged records are ones that the prosecutors put tags on when going through the database, and so even assuming for purposes of the question that we're talking about a million tagged records rather than six million, all the records, revealing the one million documents that the grand jury was perhaps most interested in that Volkswagen produced would create a substantial Rule 6e problem all its own. Are you just using that as a round number? Are there actually one million? I believe that the range figure is approximately 700,000 to 1.3 million. Of tagged records? Of tagged records. Those are the ones that the government would be entitled to not disclose under 6e, correct? No, Your Honor. The entire scope of the production that Volkswagen made, the whole production was in response to a grand jury subpoena, and all of the records in the 5.5-ish million are labeled as having been produced in response to a grand jury subpoena. Right, but the special master's opinion says that only some of them were tagged and a lot of them were duplicates, and so why doesn't that restrict what the Department of Justice would be able to withhold? So I think there's two things there, Your Honor. Number one, the whole universe is the documents that Volkswagen produced in response to the subpoena, and disclosing all of them or a substantial portion of them would plainly disclose the sorts of the time periods, the custodians, the conduct that the grand jury was interested in investigating, and restricting it down to whether it's the one million tagged records or the three million untagged records and disclosing some of them or one half or the other half just creates its own Rule 6e problems by providing additional information about what the grand jury thought was particularly relevant. Well, so six million documents, it would seem, would conceal what the grand jury was interested in or what the Department of Justice was interested in because it's such a huge amount. So I'm not sure why disclosing all six million documents would necessarily show the matter occurring before the grand jury. Can you explain that? Yes, Your Honor. Disclosing the six million documents, all of which were produced in response to a grand jury subpoena, this isn't a circumstance where you have some documents that were produced in response to a subpoena mixed in with a bunch of other documents with no way of knowing which ones are which. What was the request? Was it all documents in a 10-year period? What was the request? Isn't that sealed? So the FOIA request was all documents produced or presented by Volkswagen's counsel to the Department of Justice. The contours of the subpoena that they were being produced in response to is unquestionably Rule 6e information, and that is something that I don't think in the record and not something that we would be in a position to disclose. But I think even assuming for purposes of the question— So the FOIA request, I thought it was limited solely to documents that were produced subject to the subpoena. So the FOIA request says all documents presented by VW to the Department of Justice or VW's counsel to the Department of Justice. The record indicates that the full universe of documents presented by VW to the Department of Justice were presented in response to the grand jury subpoena, so those two universes have converged. The agreement that there's nothing outside of the grand jury subpoena that's at issue here in the FOIA request. That's correct. There was a different part of the FOIA request that asked for these monitor reports, but I think that's now fallen out of the case. And so the six million documents that we're talking about are the ones that were produced in response to a grand jury subpoena and that are identifiable as such on their face. Go ahead. I'm sorry. And as I said, I think having the full universe of documents that Volkswagen produced in response to the subpoena publicly disclosed would reveal a lot of information. It would tell you the time periods, for example, that the grand jury was interested in investigating. It would tell you the custodians that the grand jury was particularly interested in. It would tell you the particular conduct that the grand jury was interested in. Why is that? I mean, it would certainly tell you the time period, I guess, because it would be whatever the dates were, but how would it show something more than that if it was like, for example, if the request to the subpoenas had all of your documents because of the special mail. She said every email that was exchanged, all the documents between these two periods. So I do want to be mindful of the timer on her. I know Ms. Ratner has her six minutes. But I think when you're talking at this point about the documents that were produced in response to the subpoena. And so, for example, if there are a lot of documents that were sent by, you know, John Smith at Volkswagen, I think that would be a pretty good indication that the grand jury was interested in investigating John Smith. If there are a bunch of documents that come from a particular Volkswagen division or subsidiary, it would be pretty good evidence that Volkswagen or the grand jury was interested in investigating that entity or that subsidiary. Let me ask you this question. Are you taking the position that so long as the grand jury subpoenas documents regardless from a party, that those documents are therefore under the seal of the grand jury and presumably the Justice Department has, therefore, the right to decline to respond to a FOIA request with respect to those documents? With the caveat, Your Honor, that we're talking about documents not just that were subpoenaed by the grand jury, but that are identifiable on their face as having been. Let me give you an example. Let's say that and I'll pull from something here out of the news. Let's say that if the government wanted to prevent certain documents from reaching the public, could they convene a grand jury and the grand jury then subpoenas all the documents relating to that particular instance that the government doesn't want to have out because it might be embarrassing and therefore all those documents are forever sealed? No, in a couple of ways. So one is, generally speaking, if there are documents out in the world that the grand jury subpoenas, they are then produced to the government. The government's sort of copy of those documents, if they're identifiable as having been produced in response to the grand jury subpoena, are protected by Rule 6e. The individual who has them out in the world, I think, would not necessarily have a Rule 6e claim if someone else had an entitlement to those documents. There's some other entitlement, but what Judge Edge was saying is that the government could effectively seal all the documents that it had gotten, and unless there was some alternative basis, which I'm not sure what it would be, they could keep them secret. So I think that the important thing to understand is that before the government has the documents, they're not subject to FOIA at all, and so in this case, when Volkswagen has the documents, obviously they can't be FOIAed, and so producing them in response to the grand jury subpoena doesn't convey additional secrecy rights in those documents. If someone were in civil litigation with Volkswagen and subpoenaed or served a discovery request for documents that Volkswagen happened to produce to the grand jury, I don't think Volkswagen would be able to protect those documents in the civil litigation, but it just doesn't. The hypothetical doesn't really even apply because if those documents were somewhere else, they would be discoverable. I mean, the only thing about this case that's unique, I think, correct me if I'm wrong, is that the only copy of those documents was produced to the government pursuant to the subpoena. If the government had them separately outside of the subpoena, they could be FOIAable, right? Correct. That's Dynavac. Correct. And so if the government had copies of these documents that were not produced in response to the subpoena, were not identifiable on their faces having been produced in response to the subpoena, and someone submitted a FOIA request for documents related to Volkswagen without sort of mentioning the grand jury or talking about what had been subpoenaed, then Rule 6e likely would not protect those documents. Do you want to give time? I would like to give time for Ms. Ratner and for a rebuttal. Thank you, Judge Okuda. May it please the Court, Morgan Ratner for Volkswagen. I want to make two quick points of clarification. The first is in response to this last line of questioning, your question, Judge Ezra, and your response, Judge Nelson. The easiest guiding principle for these cases is the one set out in the D.C. Circuit's SEC against Dresser decision, which is the grand jury neither adds to nor subtracts from rights available otherwise. And so if the only way you have access to these documents, theoretically, is because the grand jury asked for them, as in this case, well, Rule 6e doesn't allow that. You're adding to your rights by taking advantage of the grand jury. Are there any cases that address that? I mean, as I understand it, as I look through all these cases, this is unique. Every other case where documents that have been subpoenaed by a grand jury or FOIA requested that were subject to a grand jury, the only basis for producing such documents was because they were available somewhere else. Correct. So the closest cases I would give you, Judge Nelson, are the Second Circuit's decision in a case called Grinberg, which was asking for subpoenaed corporate records. It took the court three pages and an unpublished opinion to say, obviously that's taking advantage of the grand jury. That's out of bounds. The other case that I think comes closest to this is the Supreme Court's decision in a case called United States against Sells Engineering. And there, every single justice took for granted that subpoenaed documents were themselves matters occurring before a grand jury. How is that not true? I mean, I'll ask the other counsel, but what is a matter before a grand jury other than a subpoena that was issued by the grand jury? I mean, Your Honor, I of course agree. I think there's no way to square the special master's decision here with the Supreme Court's decision in Sells Engineering. The word matter, at least from Black's Law Dictionary, when the Rule 6e was issued, says, the substantial facts forming basis of the claim or defense, facts material to the issue, substances as to which from transactions that are recurrent. So it's not every e-mail that was produced. It's those e-mails or those documents that form the basis of the claim. So how do we know that the 6 million documents form the basis of the claim against VW? So, Judge Okuda, I don't think that's a correct understanding of matter in this context because it's matter occurring before the grand jury. It's everything that is – The matter has to be an actual matter, not just every document that was created by the subject, the VW, during a time period, for example. So there are two different things a grand jury does. One is the grand jury does deliberate and choose whether to indict. But the other thing a grand jury does is investigate. And as part of its investigation, if it says, give us all the things related to X and we produce what we have related to X, those are matters occurring before the grand jury in its investigative capacity. So if you have a relevance objection to a grand jury, does Volkswagen have a relevance objection to a grand jury subpoena? So what you could see if cases – if this case were to – if you were to affirm the district court's decision here is I do think you would have a response by companies and any subjects of a grand jury investigation of challenging grand jury subpoenas as overbroad or seeking to quash them. You don't see a lot of that now because – And how could you do that? I mean, would that have to be under seal before – I mean, I don't even know how you would object to the relevance of a grand jury investigation because a grand jury can ask whatever it wants. I mean, that's the whole point, isn't it, is it's trying to figure out what issues it needs to consider. I think that's exactly right, Judge Nelson. My point is that this was set out by the Supreme Court in Douglas Oil. The whole point of the grand jury's extremely broad investigative authority is that it's matched with a broad secrecy rule, and that allows for full and frank disclosure. We're out of time now, but we'll give you a minute for rebuttal. Thank you. We'll hear from Mr. Calvers. Good morning, and may it please the Court. Daniel Jacobs for Professor Lawrence Calvers. I'd like to start where you left off, Judge Ryan, but before I do I'd just like to say having served at DOJ in the Environment and Natural Resources Division for much of my career, I am very familiar with FOIA requests, and DOJ's approach in this case. You're aware that, I mean, if we do anything less than affirm the district court, this is going to take 20 years to respond to a FOIA request covering 4.5 million documents. Well, so many things to say. Let me be succinct. There is a case called Wiener, another professor at UC Irvine, that took 20 years. And when I said to my client that case took 20 years, he says, I don't think I have it. You're hoping. So this special master opinion said that plaintiff has already agreed to limit his request by excluding all untagged records. Is that correct or incorrect? So let me answer both of your questions and inquiries from the last round, so to speak. The request, Judge Nelson was, quote, a copy, part of the request relevant today, a copy, and I'm quoting, of all factual evidence presented by Jones Day to the Justice Department as the term is used on page 295 of Volkswagen's 2017 annual report. So Volkswagen publicizes the fact that it's turned over these records. My client never asked for records that were responsive to a subpoena. And let me make what I think is a very— Well, I guess you don't know, but is there a dispute here? I'm operating under the assumption, correct me if I'm wrong, that all six million of these documents, there's only one copy of them, and they all came through a grand jury subpoena. Is that correct or is that wrong? I can't speak to that. I don't have that knowledge. What I can say is there's been sort of different variations of whether or not these documents were actually produced in response to a grand jury subpoena. There is this very broad characterization in a very early affidavit declaration by the Justice Department FOIA officer saying the documents were all produced in response to a grand jury subpoena. There are other variations in other Justice Department declarations. When you look at the declaration submitted by Volkswagen's lawyer— Can you point us to anything that would suggest that there are documents here that were obtained any other way than through a grand jury subpoena? There's roughly a handful of what I— if you look at what the government submitted as an initial bond index, you'll see there are documents, a handful of documents that are organizational charts. Those are not Volkswagen's documents. Those were presumably not responsive to the grand jury subpoena. The distinction I really want to make is— If that's true, that's what the D.C. Circuit did. The D.C. Circuit remanded to say, hey, if there's some confusion about whether these were obtained solely through the grand jury or not, then the district court can go in and ferret those out. Are you aware of—assuming that all documents came through the grand jury subpoena, are you aware of any court that has ever required a document to be produced, relevant or not relevant, if it was obtained solely through a grand jury subpoena? Absolutely. Who? Absolutely. We can look at the D.C. Circuit case that Volkswagen has embraced, and that's the Fund for Constitutional— make sure I get it right here. In that case, you're saying there were documents that were only obtained through a grand jury, no other basis, and they required production. Fund for Constitutional Government versus National Archives and Records Service. So that's the Watergate case. And the special prosecutors turn over documents. My favorite example is the first category of information— and by the way, the special prosecutors, when they're done with the investigation, turn over the records to the archives. So when the request actually hits the courts, the archives have the documents. They produced a fair number of the documents, and so my specific example— So that actually undercuts it, because they were with the archives. Well, they got to the archives via the special prosecutors, via the subpoena. I understand that, but that's my whole point. If these documents went outside of the grand jury subpoena process, you have a claim. In that case, they went to the National Archives. 6E may not apply. If they stay solely with—these were blocked, at least the representations we have. That's why I'm asking you these questions. The representations we have are that these were sold off. No one else had access to them. They were only used for the grand jury subpoena. The case you just gave me says, yeah, if they send those out to somebody else, and under Judiciary's hypothetical, if these documents exist somewhere else, they're fair game. But if they're only under a grand jury subpoena, they're protected. A, we don't know that any of these documents— That's why I'm asking you, and maybe we should remand to figure that out. The special master would—I can't speak for her, but she did want further factual development of the record. The government didn't want that. So the special master said that you had agreed to limit your request, and then she said that the duplicates should be withheld. So what's your response to that? And then there was using a translation tool to further process the documents. So I think that was in the initial set of what the government calls the presentation documents, some 270-odd. And we have been very reasonable from the start. Once they said that there are—that the vast majority are untagged, fine. Let's just give us the tagged records. Well, I don't understand that. You wanted the tagged records. You didn't want the untagged records. The tagged records seem to be exactly what would disclose with the grand jury. They would be most relevant to what the grand jury considered. Not necessarily. Not necessarily. Can I finish my response on the Fund for Constitutional Government? Because it involves Watergate. The first category of documents relate to the 18-and-a-half-minute gap, the notorious 18-minute-and-a-half gap in the tape, right? So the tapes come in via subpoena. If we're going to apply a rule that a document— It doesn't—we know— Counsel, it doesn't even comply here. Because you have a government document, a tape, that was held by the National Archives or by the president or by somebody else. That was in the government possession separate and apart from the subpoena. So the Watergate stuff, it's not even analogous here. Nixon versus United States, with all due respect, Your Honor, we know there was a subpoena for the tapes. I don't disagree with that. But the tapes were already held by the government. They were held outside of the subpoena process. I see, because you're saying— Here, Volkswagen, the only reason the government has these documents is because of a subpoena. If you look—I take your point. Because the president had the tapes, they were government documents. So let me give you a different example from the same case. If you look at Fund, you will see, summarized in the circuit court's opinion at 6.56, at second at 8.69, the very, very narrow aspects of the documents, all subpoenaed, that could be redacted. There were a lot of subpoenaed documents produced in that case. The only ones that were redacted were, and I'm quoting, naming or identifying grand jury witnesses, quoting or summarizing grand jury testimony, discussing the scope, focus, and direction of the grand jury investigations, and identifying documents considered by the grand jury and conclusions reached as a result of the investigations. The documents that Volkswagen produced don't include any of that. And if you want to even— But you don't know that. They do include subpoenas. Let me run with your hypothetical. Let's say some of them fall into that category. Well, clearly. And that's what Judge Olguin was saying. Give me a Vaughan Index and show me why you get to withhold some of the documents. When the special master said no categorical exemption, she was saying the same thing that Judge Olguin said on February 5th of 2021. No categorical exception. Neither one of them is ruling out the opportunity to assert a valid individual on an individualized basis. I don't think that you have answered my question. My question is can you point me to a case where— because everyone that you've presented so far has fallen apart. So can you present me with a case where the documents were obtained solely through a grand jury subpoena. They're not housed in any other government. They're not in possession by the government in any other basis where those have been ordered not to be produced because they're not protected by 6E. So if you look at the district court's opinion in the Fund for Constitutional Government, at 480— The case, it doesn't work for you. Constitutional, those documents, we've already been through this. Those documents were held by the government outside of the subpoena process. I want a case where they were not held by any government agency. I beg to differ. The government got— If you look at the list at 485 FSUP at 12, it's pretty clear that those documents came in by subpoena and that some of them, most of them were produced, and some of them— Who produced them? Initially, the prosecutors produced some of them? No, no. Who produced them to the government by subpoena? B.B. Rubozo? I mean, if you look at the list, you do get an idea that they were private parties. Can I ask you with this Vaughan Index issue? So normally when the government has documents that are foyable, they would prepare a Vaughan Index to say, these documents cannot be produced under a specific exemption. These documents can be. That's what the Vaughan Index. So are you suggesting that with the 6 million documents, maybe the 1.3 million tagged documents, that the government needs to produce a Vaughan Index? No. What we've said for the last four years, I think, maybe longer, is with respect to this, what we call the first transcript documents, what the government refers to as the presentation documents that appear in its first Vaughan Index, and I'm trying to give you the number, I think it's 271 or so, we're saying let's see a valid Vaughan Index for just that limited set and let the special master rule on your Exemption 3, your Exemption 4, your Exemption 5, your Exemption 6, and let's go from there. So on Exemption 6E, you're not saying that every document that was subpoenaed is not indisclosable under 6E? Not at all. Not at all, Judge Okuda. Not at all. In fact, if you look at our initial FOIA requests, you will see that we especially recognize Volkswagen's potential Exemption 4 assertion for its legitimately bona fide, I think is the word we use. Tell us if you have bona fide or confidential commercial information. Fine. And that shows up on this initial Vaughan Index as about a quarter of the documents. Of the 6 million or of the 1.5? A quarter of the 271 or so. They did a Vaughan Index for what they call the presentation documents. They have six meetings with the process. I don't understand what your basis would be to get the 271 documents that were presented to the grand jury. No, no, no. I'm sorry, I'm confusing you. The government tells us that 271 or so of the documents, the Jones Day handpicks, which presents a different interesting question, and presents separately to the government in six meetings in Detroit and Washington. Those are what they initially said were responsive to our request. Oh, because they're claiming those are the documents that we're talking about in their disclosure? They said you couldn't possibly mean 6 million? So they, of course, you can tell from the request itself that I read to you earlier, Judge Nelson, we didn't have any idea of the number. We see that Volkswagen is saying we have cooperated with the government. We've turned over all these records. Fine. They become government records. They don't say anything about a subpoena. And we don't know. I hope if I didn't make this point, I want to make it clear. We don't know how many, if any, of those documents were responsive to the subpoena. That's different from saying, and if you look at the Weinstein. Can I ask you that, because I think that's relevant here, not to throw another relevance in. Why does it matter whether they're responsive to the subpoena? My concern is if we go your way in any form or fashion here, aren't we inviting, I mean, companies respond to subpoenas because they think they have protection from FOIA. If they don't, aren't we just inviting a whole bunch of relevancy fights beforehand? And how do you even fight relevancy of a subpoena to a grand jury? I heard that come up earlier, and I don't know the answer to how you would fight relevancy to a grand jury. I will say that there are a lot of exemptions. And just as I said earlier, Volkswagen, we've conceded that Volkswagen is protected by Exemption 4 with bona fide commercial confidential information. We've said that in the request. We've been very reasonable, I think, and the response that we get back, and when they say, well, we want to start with 271, we're like, fine, we'll start with the 271. We don't expect, my client doesn't have the resources to look through six, doesn't have the resources to look through one million. And if you look at the document protocol that we submitted pursuant to the minute order at the end, we gave other examples, okay, give us this 271, give us some lists, index, subtitles of the tagged documents, and let's work as they did in the Watergate case. The special prosecutor worked with the requester. The archives worked with the requester to come up with, to call out these six categories of documents, and then they produced them. And even within that set, right, limited redaction. This is a wholesale. You're running out of time. One last point. There is no pro se rule in the D.C. Circuit. There is no pro se rule prohibiting, this goes back to SEC versus Dresser, OMBAC in D.C. in 1980, no pro se rule against the disclosure of documents subpoenaed by the grant jury. Thank you. Thank you. Thank you, Your Honor. I'd just like to make two quick points, one factual and one legal. On the factual point, the record here makes exceedingly clear that the full six million documents that we're talking about were produced in response to a grand jury subpoena. In no other way? And were not obtained any other way? Correct. Or shared outside of that? Correct. So look at ER 104, which is a VW declaration that says that the only documents they produced to the government were produced in response to a grand jury subpoena. And then we'll look at ER 173 and 183 to 84, which are the government declarations explaining, again, that the documents were produced in response to a grand jury subpoena, with the exception of four pages that contain labels saying that they were produced in response to a grand jury subpoena, making them identifiable on their face as grand jury subpoena documents. Counsel, so I want to make it very clear here. Your position is that so long as documents are produced pursuant to a grand jury subpoena, they are insulated from any FOIA request. Is that your position? No, Your Honor. If the documents are produced in response to a grand jury subpoena and are identifiable on their face as having been produced, I would encourage the court to look at the Barko case or the Lebeau case, probably from the D.C. Circuit, which explains this distinction. If you have some grand jury subpoena documents that aren't identifiable as such and are mixed in with a bunch of other documents, so you couldn't tell which ones were subpoenaed by the grand jury, then those might not be protected. But if looking at the document would tell you this was a document that was produced in response to a grand jury subpoena, then disclosing it would reveal a matter. Is it okay if I ask?  What about Mr. Kalber's position that they didn't know that's what they were even asking for? It was the government that sort of came in and said, look, you asked for these documents, or I guess Volkswagen said, our disclosure only covers those things that were subject to the grand jury subpoena. Right. So the issue here is that all the documents, again, with the exception of those four pages of organizational charts, themselves contain on their face. Who produced those four pages? Those four pages, I think we may well have other FOIA exemptions, and also they may well implicate Rule 6e, given the context in which the request has been made and the context in which they would have to be disclosed. But those four pages, I think, present a harder question than the other 6 million minus four pages, which themselves on their face make clear that they were produced in response to a grand jury subpoena. And then the one legal point, if I could have the court's indulgence, is there really is no other case that we're aware of in which a court has ordered in response to a FOIA request that the government produced documents identifiable as grand jury subpoena documents. If fund for constitutional avoidance is Professor Kalber's best case, I would encourage the court to go read it because at pages 868 to 870, the court addresses the Rule 6e question and makes it very clear. It sustains the Rule 6e withholding and makes clear that the documents, even if they weren't presented to the grand jury, if they were subpoenaed by the grand jury as exhibits or as potential exhibits, then revealing them would reveal a matter occurring before the grand jury. Thank you. We thank both sides for their argument. The case of Lawrence Kalber's versus EOJ and Volkswagen is submitted. And the final case is Carmen and Cisco versus Jackson National Life Insurance. That's submitted on the briefs. And the court for this session stands adjourned.
judges: IKUTA, NELSON, Ezra